# 14-1167

---

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

## TIMOTHY B. BOSTIC, ET ALS
### PLAINTIFFS-APPELLEES

v.

## GEORGE E. SCHAEFER, III, ET ALS
### DEFENDANTS-APPELLANTS

---

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA

---

### BRIEF OF DAVID A. ROBINSON AS *AMICUS CURIAE*
### IN SUPPORT OF DEFENDANTS-APPELLANTS
### IN SUPPORT OF REVERSAL OF DISTRICT COURT DECISION

David A. Robinson
P.O. Box 780
North Haven, CT 06473
Tel. 203-214-4078

Date: March 25, 2014

# Table of Contents

Table of Authorities.................................................................................. ii

My Identity, Counsel, Expenditures, and Interest in This Case............................ 1

Argument

    There is no rational basis for the government to
reward a same-sex couple for staying together.
That is what same-sex marriage does.............................................................. 5

    Court-ordered legalization of same-sex marriage based
on "equal protection" will lead to a man's being allowed
to marry his brother, elderly (too old to get pregnant) sister,
or elderly mother. ....................................................................................... 9

    Same-sex couples can fully enjoy their lives without a
marriage certificate...................................................................................... 15

Certificate of Compliance with Rule 32(a) ...................................................... 15

Certificate of Service........................................................ last page, unnumbered

# Table of Authorities

**Cases**

*Goodridge v. Department of Public Health*
798 N.E.2d 941 (Mass. 2003) ........................................................ 2, 3, 11, 12

*Lawrence v. Texas*
539 U.S. 558 (2003) ................................................................................ 12, 14

*United States v. Windsor*
133 S. Ct. 2675 (2013) .......................................................................... 4, 9, 13


**Statutes**

Cal. Bus. & Prof. Code § 865(b)(1) ........................................................... 9

Conn. Gen. Stat. § 46b-21 ......................................................................... 10

Del. Laws tit. 13, § 101 ............................................................................. 10

Haw. Rev. Stat. § 572-1(1) ........................................................................ 10

Ill. Comp. Stat. 750, ch. 40, par. 212(a)(2)
(new legislation is Ill. Public Act 098-0597, SB0010, eff. 6-1-14) ............ 10

Maine Rev. Statutes § 701(2)(a) ............................................................... 10

Md. Code. Ann., Fam. Law § 2-202(b)(1) ................................................. 10

Mass. Gen. Laws ch. 207, § 1 ................................................................... 10

Minn. Stat. 2013, § 517.03(2) .................................................................... 10

N.H. Rev. Stat. § 457:2 .............................................................................. 10

N.J. Stat. Ann. § 45:1-54, -55 ...................................................................... 9

N.Y. Dom. Rel. Law § 5 ....................................................................... 10, 11

R.I. Gen. Laws § 15-1-2 ............................................................................ 10

Vermont Stat. tit. 15, § 1a .......................................................................... 10

Wash. Rev. Code § 26.04.020(2) ............................................................... 10


**Book**

David A. Robinson, *A Legal and Ethical Handbook for
Ending Discrimination in the Workplace*, 2003 .................................. 1, 2, 5, 8

**Articles**

Kathleen Burge, "Gays have right to marry, SJC says in historic ruling"
*Boston Globe*, Nov. 19, 2003 ........................................................... 3

Gretchen Livingston & D'Vera Cohn, "Childlessness up among
all women; down among women with advanced degrees"
*Pew Research Social & Demographic Trends*, July 25, 2010 ..................... 7

Michael Paulson, "Strong, divided opinions mark clergy response"
*Boston Globe*, Nov. 19, 2003 ........................................................... 3

Kenneth L. Ross, "Book targets workplace discrimination,"
*Sunday Republican*, Oct. 19, 2003 ........................................... 1, 2
Note: *The Republican* is the Springfield, Mass., daily newspaper,
not a political organization.

James B. Stewart, "A C.E.O.'s Support System, aka Husband,"
*New York Times*, Nov. 4, 2011 .................................................... 7

<u>My Identity, Counsel, Expenditures, and Interest in This Case</u>

I am an individual. I am not a corporation or organization. I am a 61 year-old man residing in Connecticut. I am a U.S. citizen. I lived in Massachusetts from my birth in 1953 to 2002, then moved to Connecticut. I am a lawyer. I earned my J.D. from Washington University in St. Louis in 1977. I practiced law in Massachusetts from 1977 to 2008 and now practice in Connecticut. My law practice concentrates in labor and employment law, including the laws pertaining to sexual orientation discrimination. I teach the human resource management course at the University of New Haven. I have taught there for nine years (2005-present). I am my own counsel. I wrote this brief myself and paid all costs associated with it. I have received no payment for it.

In early 2003 I wrote a book that I believe possibly played a role in the legalization of same-sex marriage in Massachusetts in November 2003. The book was entitled *A Legal and Ethical Handbook for Ending Discrimination in the Workplace*. It was published by Paulist Press, a Christian book publisher, in the late spring or early summer of 2003. In addition to legal tips and practical tips, the book included some Bible quotes I thought might motivate employers to provide equal opportunity to all. It received some publicity in Massachusetts in October 2003. *See, e.g.*, Kenneth L. Ross, "Book targets workplace discrimination," *Sunday Republican* (the Springfield, Mass., newspaper is called *The Republican* because

1

that was its original name in 1824; it is not a reference to the political party; the

name predates the political party), Oct. 19, 2003, p. E1. I think something I said in

the book was misconstrued as an argument in favor of same-sex marriage. I said on

page 71:

> Some of you might feel that laws protecting homosexuals from
> discrimination conflict with the Bible. The Bible forbids homosexuality
> (Lev 18:22; 20:13; 1 Cor. 6:9), but there is no conflict. These laws do
> not require you to *approve of* homosexuality. They require you *not to*
> *discriminate against* employees for being homosexual. In other words,
> these laws permit you to disapprove, in your heart and mind, of
> homosexuality, but do not permit you to play God. The law is the same
> as stated in the *Catechism of the Catholic Church*, which requires
> acceptance of homosexuals but does not require approval of
> homosexuality. "They must be accepted with respect, compassion,
> and sensitivity. Every sign of unjust discrimination in their regard
> should be avoided" (*Catechism*, paragraph 2358).

(emphasis in original). I was talking about employment, not marriage.

One month later, on November 18, 2003, the Massachusetts Supreme

Judicial Court (SJC), in a 4-3 decision, became the first court in the United States,

and possibly the world, to hold that same-sex couples have the right to marry.

*Goodridge v. Department of Public Health*, 798 N.E.2d 941 (Mass. 2003). The

court held that the Due Process and Equal Protection clauses of the Constitution

require Massachusetts to issue marriage certificates to same-sex couples who

request them. The *Goodridge* decision shocked many people on both sides of the

2

gay rights debate.[1] For reasons I will explain, I disagreed, and continue to disagree, with *Goodridge*. More importantly, I wondered if someone on the SJC read my book and construed, or misconstrued, my statement on page 71 as an argument in favor of same-sex marriage.

Whether anyone on the Massachusetts SJC read or was influenced by my book, I do not know for certain. I think a number of lawyers and judges read it or parts of it, but I don't know exactly who.

In any event, same-sex marriage remained largely a Massachusetts-only phenomenon from 2003 to 2008. And except for Iowa in 2009, when the Iowa Supreme Court issued a decision similar to *Goodridge*, it remained a largely a "liberal" New England-New York and California phenomenon from 2008 to 2012.

But today (2014), a number of courts, citing the Due Process and Equal Protection clauses, are ordering states such as Virginia to allow same-sex marriage even if most voters in that state are against it. Some states' legislatures are enacting laws allowing same-sex marriage because they fear that courts will order them to.

---

[1] *See, e.g.,* Kathleen Burge, "Gays have right to marry, SJC says in historic ruling," *Boston Globe* Nov. 19, 2003 ("This is such an incredible event," said a lawyer who wrote the amicus brief for the Boston Bar Association supporting gay marriage. "I think for the gay community, it is somewhat akin to the Berlin Wall coming down."); Michael Paulson, "Strong, divided opinions mark clergy response," *Boston Globe*, Nov. 19, 2003 (Boston archbishop O'Malley says "It is alarming that the Supreme Judicial Court in this ruling has cast aside what has been . . . the very definition of marriage held by peoples for thousands of years"; Massachusetts Catholic Conference calls *Goodridge* "radical").

3

New Jersey Governor Chris Christie, who opposes same-sex marriage, allowed it because he worried that the New Jersey Supreme Court would order him to.

I think this is a serious threat to democracy. I feel compelled to speak up. I want to explain why the indented paragraph on page 2 above ("Some of you might feel . . . .") is not an argument for same-sex marriage. I want to explain why I think laws that protect gays from discrimination in the workplace are good public policy but laws allowing same-sex marriage are not. Of course, whether I am correct or incorrect about the latter is something each state has, or should have, the right to decide for itself. A federal court should honor the state's decision. *United States v. Windsor*, 133 S. Ct. 2675, 2689-91 (2013).

I did not get married until I was 50 years old. I married a woman. We remain married today. Like most people who do not get married until they are 50, I have known many gay men and women. I have known men and women who were gay for a period of time—some were gay for a long time—but eventually married someone of the opposite sex. I am glad they were free to do so. Had they been legally married to someone of the same sex, they would not have been as free to do so. That is one reason (not the only reason, but one reason) it is rational for the Commonwealth of Virginia not to allow same-sex marriage. I will now explain.

4

<u>Argument</u>

<u>There is No Rational Basis for the Government to</u>
<u>Reward a Same-Sex Couple for Staying Together.</u>
<u>That is What Same-Sex Marriage Does.</u>

Let me begin by explaining the statement in my book that gays should be "accepted" and "unjust discrimination in their regard should be avoided."

There is a difference between "accepted" and "applauded." Civil marriage is applause from the government. The government applauds the couple for entering into the type of intimate relationship the government desires. The government desires that if a man and woman have, or plan to have, sexual intercourse, they exchange promises of lifelong commitment. Why? There may be several reasons but the main reason is this: There exists a possibility with most (not all, but most) male-female couples that the woman will get pregnant and give birth to a child. It takes two people—a man and woman—to create a child, and about 20 years for the child to become self-sufficient. The government hopes the man and woman stay together and raise the child together. The government does not *require* them to stay together, but the government hopes they do. The government created a status called "marriage" to give the couple an incentive to stay together and to reward them for staying together. The government does not require them to marry, but many do marry. If the man and woman marry, the incentives and rewards include tax benefits, insurance benefits, social security benefits, and some other benefits.

5

The government allows the couple to divorce, but if they divorce, the benefits end. Due to the increased risk of birth defects if the man and woman are blood relatives of each other, the government prohibits such a couple to marry, and in some states prohibits them to have sexual intercourse.

A same-sex couple (just the two of them, with no help from the opposite sex) cannot conceive a child. Therefore, it makes no sense for the government to spend money rewarding a same-sex couple for staying together. I'll discuss adoption, as distinguished from conception, on the next page (p. 7).

Same-sex marriage supporters argue that male-female couples are allowed to marry, and to stay married, even if they do not conceive children. They argue that laws defining marriage as the union of a man and woman are over-inclusive. They argue that such laws reward some male-female couples that don't deserve reward. Even if they are correct about that, it does not mean the government should reward two men for staying together. The government should not have to ascertain the plans and fertility of every male-female couple that applies for a marriage license, nor monitor whether they conceive a child. The government has made a rational, administratively manageable decision: An unmarried adult male can marry an unmarried adult female who is not a blood relative of his. It is rational because,

according to a 2011 *New York Times* article citing Census data, 87% of male-female married couples conceive children.[2]

Although a same-sex couple cannot conceive a child, they can adopt a child. But adoption is not conception. In regard to the natural parents of many (not all) children who are adopted, the purpose of the marriage laws has already been defeated. The natural parents are not raising the child together. Also, although I am unable to ascertain the exact figure, my guess is that the percent of same-sex couples who adopt a child who is not already the child of one member of the couple is much lower than the percent of male-female couples who conceive a child.

If the government grants the financial benefits of marriage to same-sex couples, the government is declaring that it is better to be in a long-term homosexual relationship than to be single. The government should not do that. It is irrational. Same-sex couples ask, "Why should the government treat us less equal than male-female couples?" I ask, "Why should the government treat two men who have sex better than the government treats two men who don't have sex? The

---

[2] James B. Stewart, "A C.E.O.'s Support System, aka Husband," *N.Y. Times*, Nov. 4, 2011, www.nytimes.com/2011/11/05/business/a-ceos-support-system-a-k-a-husband.html?pagewanted=all&_r=0iting (last visited Mar. 20, 2014). The *Times* article slightly overstates the census data. The article cites a report that says, "Among 40-44-year-old women currently married or married at some point in the past, 13% had no children of their own in 2008." www.pewsocialtrends.org/2010/06/25/childlessness-up-among-all-women-down-among-women-with-advanced-degrees/ (last visited Mar. 20, 2014).

government should treat same-sex couples as best friends—nothing more, nothing less.

Now I will discuss "unjust discrimination." My book said "unjust discrimination in their regard should be avoided." The marriage laws discriminate, but so do most laws. The word "discriminate" does not necessarily mean something bad or illegal. If someone has discriminating taste, that is good, not bad. For the reasons I have stated, the laws that define marriage as the union of a man and woman who are not blood relatives of each other are "just," not "unjust." By contrast, discrimination against gays in the *workplace* is usually unjust.

Here is another reason Virginia's marriage laws are rational. Same-sex marriage is a legally binding mutual promise to remain in a homosexual relationship for life. There is nothing wrong or illegal about promising to remain in a homosexual relationship for life. Such a promise is allowed, and keeping the promise is allowed, in all 50 states. But I don't think such a promise should be legally binding. Same-sex marriage binds it. In states that do not allow same-sex marriage, such a promise is nonbinding. It should be nonbinding. It is rational for the government to make sure no person is *legally bound* to be homosexual for life.

It is possible that a goal of the same-sex marriage movement is to do exactly that: persuade people who feel gay to *commit* to being gay. Gay is indeed a feeling: a physical and emotional feeling. It is not always a permanent feeling. A good way

to encourage people to make it permanent is to legalize same-sex marriage. Another way is to enact statutes such as those recently enacted in California, Cal. Bus. & Prof. Code § 865(b)(1), and New Jersey, N.J.S.A. 45:1-54, -55, which prohibit mental health professionals from trying to help a child, who is just beginning to have sexual feelings and whose first sexual feelings might be for children of the same sex, try to develop an interest in the opposite sex. Even if the child asks for help, it is illegal for the mental health professional to provide such help. Is that good public policy? Each state should decide for itself.

Each state should be allowed to decide for itself whether a promise to remain in a homosexual relationship for life should be binding. *United States v. Windsor*, 133 S. Ct. 2675, 2691 (2013). Virginia has chosen to make it nonbinding.

### Court-ordered legalization of same-sex marriage based on "equal protection" will lead to a man's being allowed to marry his brother, elderly (too old to get pregnant) sister, or elderly mother.

The district court held that same-sex couples have an equal right—equal to heterosexual couples' right—to marry. If the district court is correct (which it is not), it logically follows that two adult brothers have a constitutional right to marry. It would violate "equal protection" to give two adult brothers fewer rights (no right to marry) than two men who are not blood relatives.

Most same-sex marriage supporters oppose two brothers' marrying. "Don't compare homosexuality with incest," they say. "We are opposed to incest. A man is not allowed to marry his sister, so he should not be allowed to marry his brother, either," they opine. In 11 of the 13 states with statutes allowing same-sex marriage, the statutes have been carefully worded to prohibit a man to marry his brother.[3]

But if two brothers want to marry in a state in which a court has held that same-sex marriage is a federal constitutional right according the Equal Protection Clause, and state law forbids them to, the brothers will argue the law is unconstitutional. The brothers will make the same argument that same-sex couples make when arguing that laws restricting marriage to male-female couples are unconstitutional. The brothers will argue they 1) love each other, 2) want the benefits of marriage (just being brothers does not entitle them to those benefits), 3) aren't harming anyone (they cannot conceive a child together), and 4) aren't

---

[3] Conn. Gen. Stat. § 46b-21; Del. Laws tit. 13, § 101(a); Haw. Rev. Stat. § 572-1(1); Ill. Comp. Stat. 750, ch. 40, par. 212(a)(2) (new legislation is Ill. Public Act 098-0597, SB0010, effective. June 1, 2014); Maine Rev. Stat. § 701(2)(a); Md. Code Ann., Fam. Law § 2-202(b)(1); Minn. Statutes 2013, § 517.03(2); N.H. Rev. Stat. § 457:2; R.I. Gen. Laws § 15-1-2; Vt. Stat. tit. 15 § 1a; and Wash. Rev. Code § 26.04.020(2). The two states with statutes allowing same-sex marriage that allow a man to marry his brother are Massachusetts (G. L. c. 207, § 1) and New York (Dom. Rel. § 5). Four other states, California, Iowa, New Jersey, and New Mexico, allow same-sex marriage but only as a result of court order based on the state or federal Equal Protection Clause. I do not know whether same-sex blood relatives are allowed to marry in those four states.

diminishing anyone else's marriage. They might also argue, if it's true, that they don't have a sexual relationship.

Same-sex marriage supporters will argue that if two brothers marry, it is "incest." The brothers will argue that it is not incest. N.Y. Dom. Rel. Law § 5; *Goodridge*, 798 N.E.2d at 953 (Massachusetts marriage statute is "silent as to the consanguinity of male-male or female-female marriage applicants)." The danger of incest is that it increases the likelihood of conceiving a child with birth defects. Two men cannot conceive a child. So why should two brothers have fewer rights (no right to marry) than two men who are not blood relatives? It is quite possible these courts (courts holding that "equal protection" means same-sex couples have a constitutional right to marry) will agree with the brothers.

Next, a man will try to marry his elderly (post-menopause) mother. Same-sex marriage supporters will vehemently oppose it. "That is incest! Incest is illegal!" they'll say. But same-sex marriage supporters also say, "Marriage is about love, not sex or procreation." The mother will produce a doctor's certificate that she has reached menopause and cannot get pregnant, or she might argue, if it's true, that she and her son don't have sex. They will argue they should be treated like the two brothers, the two men who are not blood relatives, and a man and elderly (too old to get pregnant) woman who is not a blood relative of his. They will argue they 1) love each other, 2) want the tax benefits and other benefits of

11

marriage, 3) aren't harming anyone (they cannot conceive a child together), and 4) aren't diminishing anyone else's marriage.

When same-sex marriage supporters argue that "incest is illegal," the man and his mother will argue, first, that as a result of *Lawrence v. Texas,* 539 U.S. 558 (2003), it is not entirely clear what, if any, types of sex between consenting adults who cannot conceive children together are illegal.

Second, the man and his mother will argue that if it is illegal for a man to have sex with his post-menopause mother, it was also, until recently, illegal for a man to marry a man. If, as the district court held, the latter should be made constitutionally legal, so should the former. It seems quite possible the court will agree with the man and his mother. If it sounds ridiculous to issue a marriage certificate to a man and his mother, many people before 2003 (the *Goodridge* decision), including many people who have little or no objection to homosexuality, said it is ridiculous to issue a marriage certificate to two men.

If, on the other hand, same-sex marriage becomes legal in a state because that state's citizens or legislators vote to make it legal, then it might not lead to "incestuous" marriage. The voters or legislators can, if they choose, write the law so as to prohibit blood relatives to marry. That is what 11 of the 13 states with statutes allowing same-sex marriage have done. Does that restriction have a "rational basis?" I need not speculate about that here. The legislation will certainly

12

be entitled to some deference, because each state has "virtually exclusive" authority to define marriage as the state sees fit, so long as federal constitutional rights are not violated. *United States v. Windsor*, 133 S. Ct. 2675, 2691 (2013). The district court's decision is contrary to *Windsor*. Let me add that although I, for reasons stated herein, would vote against legalization of same-sex marriage if given the opportunity to, I greatly respect the right of each state, through a "deliberative process that enable[s] its citizens to discuss and weigh arguments for and against same-sex marriage," to choose to legalize it or not. *Id.* at 2689.

The district court held that Virginia's marriage laws infringe on the fundamental right to marry. They do not. All men and women in Virginia, of all "orientations," have the same right: to marry someone of the opposite sex who is not a blood relative. Restricting marriage to a man and woman who are not blood relatives of each other does not infringe on a gay person's right to marry any more than it infringes on an incestuous person's right to marry. Each can legally marry if he or she chooses someone of the *opposite* sex who is *not* a blood relative.

The district court analogized laws prohibiting same-sex marriage to laws prohibiting interracial marriage. The analogy is inaccurate. As the district court correctly stated, "[F]or centuries there have been powerful voices to condemn homosexual conduct as immoral." That is the difference between laws prohibiting same-sex marriage and laws prohibiting interracial marriage: No intelligent person

13

ever said it is immoral to be black. No respectable religion says it is immoral to be black. By contrast, so long as the male and female sexual anatomies are what they are, and so long as it takes a man and woman to conceive a child, many intelligent people, powerful and not, will believe that only a man and woman "unite." Many intelligent people will believe that the government should allow, but not applaud, homosexual relationships. A marriage certificate applauds them. Many intelligent people will believe that when applying for a marriage certificate, a man who has sex with a man is not "similarly situated" with a man who has sex with a woman.

Lastly in regard to Equal Protection, I feel compelled to point out the hypocrisy of most same-sex marriage supporters. As I stated above, in 11 of the 13 states that have statutes allowing same-sex marriage, a man is not allowed to marry his brother, sister, or mother. These statutes discriminate against a man and his adult brother, elderly sister, or elderly mother who want to marry, even if the women cannot possibly get pregnant. Many same-sex marriage supporters refer to the sex life of the man and his brother, sister, or mother by the ugly word "incest" or an even uglier word. But as I explained, "incest" is difficult to define. Labeling the sex lives of people who have sex with their blood relatives but cannot conceive children "incest" is like labeling homosexuality "sodomy." It is a pejorative, not a description. It devalues private, consensual, loving, arguably harmless, adult sexual behavior. It is the same type of name-calling that gay people complain of.

14

<u>Same-sex couples can fully enjoy their lives without being married.</u>

There are very, very few things married people can do that unmarried people cannot do. Even in states that do not allow same-sex marriage, same-sex couples can live together; have private, consensual sex together (*Lawrence v. Texas*); leave property to each other in their wills; own property jointly; and, in most (not all, but most) places, visit each other in the hospital and, with a simple legal document, make health care decisions for each other if one of them is disabled. They can exchange promises of lifelong commitment. They can keep those promises if they both want to. They don't need "applause" (a marriage certificate) from the government. They shouldn't be *bound* by those promises.

The district court's decision should be reversed.

David A. Robinson

David A. Robinson
P.O. Box 780
North Haven, CT 06473
Tel. 203-214-4078

<u>Certificate of Compliance With Rule 32(a)</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,760 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). This brief complies with the requirements of Rules 32(a)(5) & (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman. David A. Robinson

15

<u>Certificate of Service</u>

I certify that on March 25, 2014, I served this brief by mailing a paper copy of it,

U.S. mail (first class or express), postage prepaid, to lead counsel for each party

separately represented:


David Boies
Boies, Schiller & Flexner, LLP
333 Main Street
Armonk, NY 10504

Joshua A. Black
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004-2400

Jeffrey Franklin Brooke
Poole Mahoney, PC
4705 Columbus Street
Virginia Beach, VA 23462-6749

Trevor Stephen Cox
Office of Attorney General of Virginia
900 East Main Street
Richmond, VA 23219

Byron Jeffords Babione
Alliance Defending Freedom
15100 North 90th Street
Scottsdale, AZ 85260

David A. Robinson