Case Nos. 14-1167(L), 14-1169, 14-1173

---

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

TIMOTHY B. BOSTIC, TONY C. LONDON, CAROL SCHALL, and MARY TOWNLEY,

*Plaintiffs-Appellees*,

JOANNE HARRIS, *et al.*, on behalf of themselves and all others similarly situated,

*Intervenors*,

*v.*

JANET M. RAINEY, in her official capacity as State Registrar of Vital Records, GEORGE E. SCHAEFER, III, in his official capacity as the Clerk of Norfolk City Circuit Court,

*Defendants-Appellants*,

MICHÈLE B. MCQUIGG, in her official capacity as the Clerk of Prince William County Circuit Court,

*Intervenor-Defendant–Appellant*.

---

On Appeal from the United States District Court
for the Eastern District of Virginia, Civ. No. 2:13-395-AWA-LRL

---

## AMICUS CURIAE BRIEF OF THE AMERICAN SOCIOLOGICAL
## ASSOCIATION IN SUPPORT OF PLAINTIFFS-APPELLEES

---

Carmine D. Boccuzzi, Jr.
 *Counsel of Record for Amicus Curiae*
Mark A. Lightner
Andra Troy
Andrew P. Meiser
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000
cboccuzzi@cgsh.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................. iii

INTEREST OF *AMICUS CURIAE* ...................................................1

SUMMARY OF ARGUMENT ..........................................................2

ARGUMENT ....................................................................................5

I.     SCHOLARLY CONSENSUS IS CLEAR: CHILDREN OF SAME-SEX PARENTS FARE JUST AS WELL AS CHILDREN OF DIFFERENT-SEX PARENTS .............................................................5

     A.     ACADEMIC PERFORMANCE AND COGNITIVE DEVELOPMENT ..............................................................6

     B.     SOCIAL DEVELOPMENT ...............................................9

     C.     MENTAL HEALTH ............................................................9

     D.     EARLY SEXUAL ACTIVITY ..........................................11

     E.     SUBSTANCE ABUSE AND BEHAVIORAL PROBLEMS ...........12

II.    THE RESEARCH CLAIMED TO UNDERMINE THE CONSENSUS EITHER DOES NOT ADDRESS SAME-SEX PARENTS AND THEIR CHILDREN OR IS MISCHARACTERIZED BY APPELLANTS ...........................13

     A.     STUDIES CITED BY OPPONENTS OF SAME-SEX MARRIAGE DO NOT ADDRESS SAME-SEX PARENTS AND DO NOT UNDERMINE THE CONSENSUS ........................14

          1.     Studies Regarding the Impact of Biological and Non-Biological Parents ....................................................15

          2.     Studies Regarding the Impact of Stepparents, Divorced Parents, or Single Parents ......................................16

          3.     Studies Regarding Gender Roles in Families with Different-Sex Parents .............................................19

## TABLE OF CONTENTS
(continued)

B.    THE REGNERUS PAPERS DO NOT SUPPORT CONCLUSIONS ABOUT CHILDREN RAISED BY SAME-SEX PARENTS ................................................................22

    1.    The Regnerus 2012a Paper Offers No Basis for Conclusions About Same-Sex Parents .....................................24

    2.    The "Re-Stated" Regnerus 2012b Paper Offers No Basis for Conclusions About Same-Sex Parents ..............................26

CONCLUSION ..........................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkins v. Virginia*, 536 U.S. 304 (2002)...................................................4-5

*Craig v. Boren*, 429 U.S. 190 (1976)..........................................................21

*DeBoer v. Snyder*, No. 12-CV-10285, 2014 U.S. Dist. LEXIS 37274 (E.D. Mich. Mar. 21, 2014) ...........................................................................27

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)................................21

*Roper v. Simmons*, 543 U.S 551 (2005)......................................................4

*United States v. Windsor*, 133 S. Ct. 2675 (2013).................................3-4

*Windsor v. United States*, 699 F.3d 169 (2d Cir. 2012), *aff'd* 133 S. Ct. 2675 (2013).........................................................................................4

*Windsor v. United States*, 833 F. Supp. 2d 394 (S.D.N.Y. 2012), *aff'd* 699 F.3d 5169 (2d Cir. 2012), *aff'd* 133 S. Ct. 2675 (2013) ................................4

**Other Authorities**

Abbie E. Goldberg & JuliAnna Z. Smith, Predictors of Psychological Adjustment in Early Placed Adopted Children With Lesbian, Gay, and Heterosexual Parents, 27 Journal of Family Psychology 431 (2013) ........... 10, 16

Alicia L. Fedewa & Teresa P. Clark, Parent Practices and Home-School Partnerships: A Differential Effect for Children with Same-Sex Coupled Parents?, 5 Journal of GLBT Family Studies 312 (2009)..................................6, 9

Andrew J. Perrin, Are Chldren of Parents Who Had Same-Sex Relationships Disadvantaged?  A Scientific Evaluation of the No-Differences Hypothesis, 17 Journal of Gay & Lesbian Mental Health 327 (2013) ...............27

Brent Miller et al., Comparisons of Adopted and Non-Adopted Adolescents In A Large, Nationally Representative Sample, 71 Child Development 1458 (2000)................................................................................. 15-16

# TABLE OF AUTHORITIES

*(continued)*

**Page(s)**

C.A. Nelson & M. Bosquet, Neurobiology of Fetal and Infant Development: Implications for Infant Mental Health, in Handbook of Infant Mental Health (C.H. Zeanah Jr. ed., 2d ed. 2000)............................................................19

Charlotte J. Patterson & Jennifer L. Wainright, Adolescents with Same-Sex Parents: Findings from the National Longitudinal Study of Adolescent Health, in Adoption by Lesbians and Gay Men: A New Dimension in Family Diversity (David M. Brodzinsky & Adam Pertman eds., 2012) .............11

Daniel Potter, Same-Sex Parent Families and Children's Academic Achievement, 74 Journal of Marriage & Family 556 (2012)..................................6

Darren E. Sherkat, The Editorial Process and Politicized Scholarship: Monday Morning Editorial Quarterbacking and a Call for Scientific Vigilance, 41 Social Science Research 1346-1349 (2012) ...................................23

David Popenoe, Life Without Father: Compelling New Evidence that Fatherhood & Marriage Are Indispensable for the Good of Children & Society (1996).......................................................................................... 20-21, 22

Douglas W. Allen, High School Graduation Rates Among Children of Same-Sex Households, 11 Rev. Econ. Household, 635–58 (Sept. 2013), http://link.springer.com/article/10.1007%2Fs11150-013-9220-y........................ 8

Douglas W. Allen et al., Nontraditional Families and Childhood Progress Through School: A Comment on Rosenfeld, 50 Demography 955 (June 2013), http://link.springer.com/article/10.1007/s13524-012-0169-x/fulltext.html ...........................................................................................7

Eleanor Maccoby, The Two Sexes (1998)......................................... 19-20

Fiona Tasker, Lesbian Mothers, Gay Fathers and Their Children: A Review, 26 Developmental and Behavioral Pediatrics 224 (2005)......................................9

Gary J. Gates, LGBT Parenting in the United States (Feb. 2013), http://williamsinstitute.law.ucla.edu/wp-content/uploads/LGBT-Parenting.pdf..............................................................................................3

Gary J. Gates et al., Letter to the Editor and Advisory Editors of Social Science Research, 41 Social Science Research 1350 (2012)......................... 26-27

# TABLE OF AUTHORITIES
## *(continued)*

**Page(s)**

Institute for American Values (Elizabeth Marquardt, Norval D. Glenn, & Karen Clark), My Daddy's Name is Donor: A New Study of Young Adults Conceived Through Sperm Donation (2010) ......................................................15

Jennifer L. Wainright & Charlotte J. Patterson, Delinquency, Victimization, and Substance Use Among Adolescents with Female Same-Sex Parents, 20 Journal of Family Psychology 526 (2006) ......................................................12

Jennifer L. Wainright & Charlotte J. Patterson, Peer Relations Among Adolescents with Female Same-Sex Parents, 44 Developmental Psychology 117 (2008) ...........................................................9

Jennifer L. Wainright et al., Psychosocial Adjustment, School Outcomes, and Romantic Relationships of Adolescents with Same-Sex Parents, 75 Child Development 1886 (2004) ................................................. 7, 9-10

Joseph G. Kosciw & Elizabeth M. Diaz, Involved, Invisible, Ignored: The Experiences of Lesbian, Gay, Bisexual, and Transgender Parents and Their Children in Our Nation's K-12 Schools, Gay, Lesbian and Straight Education Network (2008) .......................................................8

Justin A. Lavner et al., Can Gay and Lesbian Parents Promote Healthy Development in High-Risk Children Adopted from Foster Care?, 82 American Journal of Orthopsychiatry 465 (2012) .................................................7

Krista K. Payne, Demographic Profile of Same-Sex Couple Households with Minor Children, 2012, National Center for Family & Marriage Research (FP-14-03), http://www.bgsu.edu/content/dam/BGSU/college-of-arts-and-sciences/NCFMR/documents/FP/FP-14-03_DemoSSCoupleHH.pdf ...................3

Kristin Anderson Moore et al., Marriage from a Child's Perspective: How Does Family Structure Affect Children, and What Can We Do About It?, Child Trends Research Brief (June 2002), http://www.childtrends.org/wp-content/uploads/2013/03/MarriageRB602.pdf ......................................... 16-18, 19

Loes van Gelderen et al., Quality of Life of Adolescents Raised from Birth by Lesbian Mothers: The US National Longitudinal Family Study, 33 Journal of Developmental & Behavioral Pediatrics 1 (2012) ..............................10

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

Loren Marks, Same-Sex Parenting and Children's Outcomes: A Closer
Examination of the American Psychological Association's Brief on
Lesbian and Gay Parenting, 41 Social Science Research 735 (2012) .......... 12-13

Marilyn Coleman et al., Reinvestigating Remarriage: Another Decade of
Progress, 62 Journal of Marriage & Family 1288 (2000) .................................... 17

Mark Regnerus, How Different Are The Adult Children of Parents Who
Have Same-Sex Relationships? Findings from the New Family Structures
Study, 41 Social Science Research 752 (2012) ........................................... passim

Mark Regnerus, Parental Same-Sex Relationships, Family Instability, and
Subsequent Life Outcomes for Adult Children: Answering Critics of the
New Family Structures Study with Additional Analyses, 41 Social Science
Research 1367 (2012) ..................................................................... 23, 28

Mark V. Flinn et al., Growth and Fluctuating Assymetry of Stepchildren, 20
Evolutionary Human Behavior 465 (1999) .......................................................... 17

Michael J. Rosenfeld, Nontraditional Families and Childhood Progress
Through School, 47 Demography 755 (2010) ................................................... 6-7

Michael J. Rosenfeld, Reply to Allen et al., 50 Demography 963 (June
2013), http://link.springer.com/article/10.1007%2Fs13524-012-0170-4 ............. 7

Nanette Gartrell & Henny Bos, US National Longitudinal Lesbian Family
Study: Psychological Adjustment of 17-Year-Old Adolescents, 126
Pediatrics 28 (2010) .............................................................................. 10, 12, 15

Nanette Gartrell et al., Adolescents of the U.S. National Longitudinal
Lesbian Family Study: Sexual Orientation, Sexual Behavior, and Sexual
Risk Exposure, 40 Archives of Sexual Behavior 1199 (2011) ...................... 11-12

Nanette Gartrell et al., New Trends in Same-Sex Sexual Contact for
American Adolescents?, 41 Archives of Sexual Behavior 5 (2011).................... 11

Nicholas H. Wolfinger, Understanding the Divorce Cycle: The Children of
Divorce in Their Own Marriages (2005) ............................................................ 17

# TABLE OF AUTHORITIES
### *(continued)*

**Page(s)**

Pamela J. Smock & Wendy D. Manning, Living Together Unmarried in the United States: Demographic Perspectives and Implications for Family Policy, 26 Law & Policy 87 (2004).......................................................19

Paul R. Amato & Fernando Rivera, Paternal Involvement and Children's Behavior Problems, 61 Journal of Marriage & Family 375 (1999) .....................20

Paul R. Amato & Frieda Fowler, Parenting Practices, Child Adjustment, and Family Diversity, 64 Journal of Marriage & Family 703 (2002)..........................21

Rachel H. Farr et al., Parenting and Child Development in Adoptive Families: Does Parental Sexual Orientation Matter?, 14 Applied Developmental Science 164 (2010) .....................................................10

Rand D. Conger et al., Socioeconomic Status, Family Processes, and Individual Development, 72 Journal of Marriage & Family 685 (2010)..............13

Sara McLanahan & Gary Sandefur, Growing Up with a Single Parent (1994) ......17

Scott Ryan, Parent-Child Interaction Styles between Gay and Lesbian Parents and Their Adopted Children, 3 Journal of GLBT Family Studies 105 (2007).................................................................10

Shmuel Shulman & Moshe M. Klein, Distinctive Role of the Father in Adolescent Separation-Individuation, 62 New Directions for Child & Adolescent Development 41 (1993)......................................................20

Stephen Erich et al., A Comparative Analysis of Adoptive Family Functioning with Gay, Lesbian, and Heterosexual Parents and Their Children, 1 Journal of GLBT Family Studies 43 (2005) .....................................10

Wendy D. Manning & Kathleen A. Lamb, Adolescent Well-Being in Cohabiting, Married, and Single-Parent Families, 65 Journal of Marriage & Family 876 (2003) ...............................................................19

## INTEREST OF *AMICUS CURIAE*[1]

The American Sociological Association ("ASA") is the national professional and scholarly association of sociologists in the United States. Founded in 1905, the ASA has more than 13,000 members, including most sociologists holding doctoral degrees from accredited universities. The ASA publishes nine leading peer-reviewed journals. The ASA is committed to and bound by the highest standards of research methodology and objectivity and is dedicated to advancing sociology as a scientific discipline and profession that serves the public good.

The ASA has a long history of presenting the consensus research findings of social scientists to American courts for their use in evaluating evidence and legal issues, and its conclusions are regularly relied on by courts. As part of that mission, the ASA submits this brief to present to the Court the consensus view of social scientists on certain issues raised in these cases—namely, the effects of same-sex parents on the wellbeing of children.[2]

---

[1] Pursuant to Rule 29(c)(5) of the Federal Rules of Appellate Procedure, *amicus curiae* states that no counsel for a party authored any part of this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief.

[2] The ASA submitted similar amicus briefs to the Supreme Court of the United States in *United States v. Windsor*, No. 12-307, and *Hollingsworth v. Perry*, No. 12-144, to the U.S. Court of Appeals for the Ninth Circuit in *Sevcik v. Sandoval*, No. 12-17668, and *Jackson v. Ambercrombie*, No. 12-16995, and to the U.S. Court of Appeals for the Tenth Circuit in *Kitchen v. Herbert*, No. 13-4178, and *Bishop v. Smith*, No. 14-5003.

## SUMMARY OF ARGUMENT

In their briefs to this Court, Appellants George E. Shaeffer, III and Michele B. McQuigg support upholding Article I, Section 15-A of the Virginia Constitution and Sections 20-45.2 and 20-45.3 of the Virginia Code (the "Virginia Marriage Bans") based on an assertion that children fare better with different-sex parents than with same-sex parents. For instance, Appellant McQuigg contends that "on average, children do not fare as well when they are raised outside 'stable marriages between [their] biological parents.'" *See* Brief of Appellant McQuigg at 36.

However, the claim that same-sex parents produce less positive child outcomes—either because such families lack both a male and female parent, or because both parents are not the biological parents of their children—is contradicted by abundant social science research. Decades of methodologically sound social science research, including multiple nationally representative studies and the expert evidence introduced in courts around the country, confirm that positive child wellbeing is the product of stability in the relationship between the two parents, stability in the relationship between the parents and the child, and sufficient parental socioeconomic resources.[3] Whether a child is raised by same-sex or different-sex parents has no bearing on a child's wellbeing.

---

[3] Nationally representative studies are useful to understand child well-being in same-sex parent households. Nonetheless, a significant amount of sociological research is based on qualitative or convenience samples, and such samples are appropriate when there are subsamples that are hard to

2

The clear and consistent consensus in the social science research is that across a wide range of indicators, children fare just as well when raised by same-sex parents as children raised by different-sex parents. Many of the social science studies cited by Appellants to support their arguments fail to evaluate same-sex parents at all. Accordingly, as a matter of science, these studies cannot serve as the basis for conclusions about same-sex parents and related child outcomes and do not undermine the social science consensus that children fare just as well with same-sex parents. To the extent some of the studies show that stability improves child outcomes, they confirm that marriage rights for same-sex couples and recognition of such marriages are likely to improve the wellbeing of children of same-sex parents by providing enhanced family stability. The Supreme Court has recognized that the government's failure to recognize marriages for same-sex couples "humiliates tens of thousands of children now being raised by same-sex couples,"[4] making it "even more difficult for the children to understand the integrity and closeness of their own family and its concord with other families in

---

capture in large data collections or on topics that require intensive interviewing to move forward the understanding of an issue.

[4] Based on the U.S. Census Bureau's American Community Survey, over 220,000 children live in same-sex couple households. *See* Krista K. Payne, *Demographic Profile of Same-Sex Couple Households with Minor Children, 2012*, National Center for Family & Marriage Research (FP-14-03), http://www.bgsu.edu/content/dam/BGSU/college-of-arts-and-sciences/NCFMR/documents/FP/FP-14-03_DemoSSCoupleHH.pdf; Gary J. Gates, *LGBT Parenting in the United States* (Feb. 2013), http://williamsinstitute.law.ucla.edu/wp-content/uploads/LGBT-Parenting.pdf. This number does not include the significant number of children living with one parent who identifies as gay, lesbian, or bisexual.

3

their community and in their daily lives." *United States v. Windsor*, 133 S. Ct. 2675, 2694 (2013). The research presented in this brief articulates these points in greater detail, and demonstrates that the government's interest in promoting the wellbeing of children is neither substantially nor rationally connected to the Virginia Marriage Bans because, *inter alia*, the overwhelming scientific evidence shows that same-sex couples are equally capable of generating positive child outcomes.[5]

Courts have long relied on social science research to inform their decisions. For example, in *Roper v. Simmons*, the Supreme Court relied on social science research showing that "juveniles have less control, or less experience with control, over their own environment" and that "[t]he personality traits of juveniles are more transitory, less fixed" to support its conclusion that capital punishment for crimes committed while a minor is unconstitutional. 543 U.S 551, 569-70 (2005); *see also Atkins v. Virginia*, 536 U.S. 304, 318 (2002) (noting that "[t]here is no evidence that [mentally retarded individuals] are more likely to engage in criminal

---

[5] The Virginia Marriage Bans in no way affect whether children will be raised by same-sex or different-sex parents. They do not encourage gay and lesbian individuals to enter into different-sex marriages, nor do they deter such individuals from having children within same-sex relationships. Various courts have made this point when assessing the constitutionality of other laws that limit the recognition of marriage to different-sex couples. For example, with respect to the Defense of Marriage Act ("DOMA"), the U.S. Court of Appeals for the Second Circuit said: "We agree that promotion of procreation can be an important government objective. But we do not see how DOMA is substantially related to it." *Windsor v. United States*, 699 F.3d 169, 188 (2d Cir. 2012), *aff'd* 133 S. Ct. 2675 (2013). *See also Windsor v. United States*, 833 F. Supp. 2d 394, 404 (S.D.N.Y. 2012), *aff'd* 133 S. Ct. 2675 (2013) ("DOMA has no direct impact on heterosexual couples at all; therefore, its ability to deter those couples from having children outside of marriage, or to incentivize couples that are pregnant to get married, is remote, at best.").

4

conduct than others" and holding, in part based on the social science evidence and "germane expertise" of *amicus curiae*, that executing mentally retarded individuals violates the Eighth Amendment).  The Appellants offer no facts to support the contention that Virginia possesses an important or rational basis for their respective state laws against marriage for same-sex couples.  In this instance, when the social science evidence is exhaustively examined—which the ASA has done—the facts demonstrate that children fare just as well when raised by same-sex parents. Unsubstantiated fears regarding same-sex parents do not overcome these facts and provide no justification for upholding the Virginia Marriage Bans.

## ARGUMENT

### I.  SCHOLARLY CONSENSUS IS CLEAR: CHILDREN OF SAME-SEX PARENTS FARE JUST AS WELL AS CHILDREN OF DIFFERENT-SEX PARENTS

The social science consensus is clear: children raised by same-sex parents fare just as well as children raised by different-sex parents.  Numerous credible and methodologically sound social science studies, including several employing nationally representative samples, form the basis of this consensus.  These studies reveal that children raised by same-sex parents fare just as well as children raised by different-sex parents across a wide spectrum of measures of child wellbeing:

5

academic performance, cognitive development, social development, psychological
health, early sexual activity, and substance abuse.

### A. ACADEMIC PERFORMANCE AND COGNITIVE DEVELOPMENT

Social science research confirms that the academic performance of children
raised by same-sex parents is indistinguishable from that of children raised by
different-sex parents.  A leading study by Daniel Potter based on nationally
representative, longitudinal data found no significant difference in academic
achievement between children of same-sex parents and children of different-sex
parents.  *See* Daniel Potter, *Same-Sex Parent Families and Children's Academic
Achievement,* 74 Journal of Marriage & Family 556 (2012).  Similarly, another
leading 2009 study by sociologists Alicia Fedewa and Teresa Clark employing
nationally representative data that examined the academic achievement of first-
grade children reported no significant differences in academic achievement
between children raised by same-sex and different-sex parents.  *See* Alicia L.
Fedewa & Teresa P. Clark, *Parent Practices and Home-School Partnerships: A
Differential Effect for Children with Same-Sex Coupled Parents?*, 5 Journal of
GLBT Family Studies 312 (2009); *see also* Michael J. Rosenfeld, *Nontraditional
Families and Childhood Progress Through School*, 47 Demography 755 (2010)
(demonstrating that children of residentially stable same-sex parents are as likely to
make normal progress through school as children from stable different-sex married

6

parents); Douglas W. Allen et al., *Nontraditional Families and Childhood Progress Through School: A Comment on Rosenfeld*, 50 Demography 955 (June 2013), http://link.springer.com/article/10.1007/s13524-012-0169-x/fulltext.html (confirming similar results of academic performance when comparing children of residentially stable same-sex parents with children of stable different-sex married parents).[6] The same pattern holds true among older children. For example, in another nationally representative study, social scientists found similar GPA levels among adolescents living with same-sex and different-sex parents. *See* Jennifer L. Wainright et al., *Psychosocial Adjustment, School Outcomes, and Romantic Relationships of Adolescents with Same-Sex Parents*, 75 Child Development 1886 (2004).

Research also reveals similar cognitive development between children raised by same-sex parents and different-sex parents. *See* Justin A. Lavner et al., *Can Gay and Lesbian Parents Promote Healthy Development in High-Risk Children Adopted from Foster Care?*, 82 American Journal of Orthopsychiatry 465 (2012). In fact, a report of children with same-sex parents reveals that they score at least as

---

[6] Opponents of same-sex marriage often cite to this study. Allen re-works data used by Rosenfeld, but he ignores stability as a control factor, and as a result, finds a difference in academic achievement. However, as Rosenfeld himself responds, and as demonstrated by the social science consensus, stability is the primary factor influencing child outcomes. By removing the control element for stability, Allen cannot discern children's family history. Allen's work thereby conceals that many children in families with same-sex parents come from other settings, such as foster care, influencing the results but not reflecting on the quality of same-sex parents. When stability is included as a control element, Allen's study confirms that same-sex parents have no negative impact on academic outcomes of children. *See* Michael J. Rosenfeld, *Reply to Allen et al.,* 50 Demography 963 (June 2013), http://link.springer.com/article/10.1007%2Fs13524-012-0170-4.

7

well as—and sometimes better than—children of different-sex parents on numerous indicators of educational achievement and involvement. *See* Joseph G. Kosciw & Elizabeth M. Diaz, *Involved, Invisible, Ignored: The Experiences of Lesbian, Gay, Bisexual, and Transgender Parents and Their Children in Our Nation's K-12 Schools*, Gay, Lesbian and Straight Education Network (2008).

Finally, opponents of same-sex marriage have cited a recent paper written by Douglas Allen for the proposition that a discrepancy in high school graduation rates exists between children raised by same-sex and different-sex parents. *See* Douglas W. Allen, *High School Graduation Rates Among Children of Same-Sex Households*, 11 Rev. Econ. Household, 635–58 (Sept. 2013), http://link.springer.com/article/10.1007%2Fs11150-013-9220-y. This study does not change the analysis of the literature because when 5-year residential stability was controlled for, there was no statistical difference in the graduation rates of young adults (ages 17–22) living in same-sex and different-sex parent families. Moreover, unlike prior research on high school graduation rates, this study rests on the living arrangements of young adults at the time of interview rather than during the relevant period of adolescence that preceded graduation (the period relevant for studying the impact on graduation rates).

### B.    SOCIAL DEVELOPMENT

The social development of children raised by same-sex parents is equivalent to that of children raised by different-sex parents.  Analysis of nationally representative data reveals no differences in social adjustment depending on whether children were raised by same-sex or different-sex parents.  *See* Fedewa & Clark at 312.  Nationally representative studies of adolescents find that the number, support, and quality of peer relationships and friendships are similar for teens raised by female same-sex parents and those raised by different-sex parents.  *See* Jennifer L. Wainright & Charlotte J. Patterson, *Peer Relations Among Adolescents with Female Same-Sex Parents*, 44 Developmental Psychology 117 (2008); *see also* Fiona Tasker, *Lesbian Mothers, Gay Fathers and Their Children: A Review*, 26 Developmental and Behavioral Pediatrics 224 (2005) (discussing studies that find that children of same-sex parents exhibited the same typical adjustments related to peer relations as children of different-sex parents and therefore could not be said to fare worse based on their parents' sexuality).

### C.    MENTAL HEALTH

Social science studies also confirm that children of same-sex parents are just as psychologically healthy as children of different-sex parents.  According to a nationally representative study, adolescents raised by same-sex and different-sex parents report similar levels of self-esteem and depression.  *See* Wainright et al. at

1886.  Other reliable studies corroborate these results.  *See* Loes van Gelderen et al., *Quality of Life of Adolescents Raised from Birth by Lesbian Mothers: The US National Longitudinal Family Study*, 33 Journal of Developmental & Behavioral Pediatrics 1, 1 (2012) (concluding that "[a]dolescent offspring in planned lesbian families do not show differences in [quality of life] when compared with a matched group of adolescents reared in heterosexual families").  Recent research focusing on young children reports that the ability of adopted children to externalize and internalize behaviors does not depend on whether they are raised in male same-sex, female same-sex, or different-sex parent families.  *See* Abbie E. Goldberg & JuliAnna Z. Smith, *Predictors of Psychological Adjustment in Early Placed Adopted Children With Lesbian, Gay, and Heterosexual Parents*, 27 Journal of Family Psychology 431 (2013).  Similarly, studies reveal no greater levels of anxiety or Attention Deficit Disorder among teenagers raised by same-sex parents than among those raised by different-sex parents.  *See* Nanette Gartrell & Henny Bos*, US National Longitudinal Lesbian Family Study: Psychological Adjustment of 17-Year-Old Adolescents*, 126 Pediatrics 28 (2010).[7]

---

[7] *See also* Rachel H. Farr et al., *Parenting and Child Development in Adoptive Families: Does Parental Sexual Orientation Matter?*, 14 Applied Developmental Science 164 (2010) (reporting similar findings); Scott Ryan, *Parent-Child Interaction Styles between Gay and Lesbian Parents and Their Adopted Children*, 3 Journal of GLBT Family Studies 105 (2007) (same); Stephen Erich et al., *A Comparative Analysis of Adoptive Family Functioning with Gay, Lesbian, and Heterosexual Parents and Their Children*, 1 Journal of GLBT Family Studies 43 (2005) (same).

10

### D.    EARLY SEXUAL ACTIVITY

Social science studies also demonstrate that teenagers raised by same-sex parents and those raised by different-sex parents engage in similar levels of teenage sexual activity. For instance, nationally representative studies show that similar proportions of teenagers raised by same-sex parents and by different-sex parents have had sexual intercourse or a romantic relationship. *See* Charlotte J. Patterson & Jennifer L. Wainright, *Adolescents with Same-Sex Parents: Findings from the National Longitudinal Study of Adolescent Health*, *in Adoption by Lesbians and Gay Men: A New Dimension in Family Diversity* (David M. Brodzinsky & Adam Pertman eds., 2012). Reports by 17-year-olds raised by lesbian mothers of their sexual behavior indicate that the age at which they first engage in sexual intercourse was slightly older than those in a gender- and age-matched national sample of children raised by different-sex parents. *See* Nanette Gartrell et al., *New Trends in Same-Sex Sexual Contact for American Adolescents?*, 41 Archives of Sexual Behavior 5 (2011). Moreover, the odds of having a sexually transmitted disease, becoming pregnant, or impregnating someone were statistically similar. *Id*. And none of the children raised by same-sex parents examined in the National Longitudinal Lesbian Family Study reported any physical or sexual abuse by a parent or caregiver. *See* Nanette Gartrell et al., *Adolescents of the U.S. National Longitudinal Lesbian Family Study: Sexual*

11

*Orientation, Sexual Behavior, and Sexual Risk Exposure*, 40 Archives of Sexual

Behavior 1199 (2011).

### E.    SUBSTANCE ABUSE AND BEHAVIORAL PROBLEMS

Social science studies confirm that children of same-sex parents are no more

likely to abuse substances than children of different-sex parents.  A nationally

representative sample of adolescents living with female, same-sex parents reveals

that the adolescents are similar to their counterparts raised by different-sex parents

in terms of frequency of and problems with substance use (*i.e.*, tobacco, alcohol,

and marijuana) and delinquent behavior.  *See* Jennifer L. Wainright & Charlotte J.

Patterson, *Delinquency, Victimization, and Substance Use Among Adolescents with*

*Female Same-Sex Parents*, 20 Journal of Family Psychology 526 (2006).

Furthermore, children of different-sex and same-sex parents report similar levels of

problematic, rule-breaking, and inappropriately aggressive behaviors.  *See* Gartrell

& Bos.

*    *    *

As the overwhelming body of social science research confirms, whether a

child is raised by same-sex or different-sex parents has no bearing on a child's

wellbeing.[8]  Instead, the consensus is that the key factors affecting child wellbeing

---

[8] Some critics make blanket dismissals of the studies underlying the social science research consensus. *See, e.g.*, Loren Marks, *Same-Sex Parenting and Children's Outcomes: A Closer Examination of the American Psychological Association's Brief on Lesbian and Gay Parenting*, 41 Social Science Research

12

are stable family environments and sufficient parental socioeconomic resources, neither of which is related to the sex or sexual orientation of a child's parents. *See* Rand D. Conger et al., *Socioeconomic Status, Family Processes, and Individual Development*, 72 Journal of Marriage & Family 685 (2010). These factors indicate that in order to enhance child outcomes and wellbeing, we should encourage stable and financially secure family units—including same-sex parent families—rather than exclude the hundreds of thousands of children living with same-sex couples from the stability and economic security that marriage provides.

## II.  THE RESEARCH CLAIMED TO UNDERMINE THE CONSENSUS EITHER DOES NOT ADDRESS SAME-SEX PARENTS AND THEIR CHILDREN OR IS MISCHARACTERIZED BY APPELLANTS

Studies relied on by Appellants and opponents of marriage for same-sex couples fail to support the claim that children fare better with different-sex parents than same-sex parents because nearly all of the studies do not examine same-sex parents or their children. For example, Appellants cite to a study by Kristin Anderson Moore et al. that was published by Child Trends to support their arguments, but the authors of that study have explicitly disclaimed the use of their work for this purpose. *See* Brief of Appellant McQuigg at 36. Similarly, the Appellants cite to studies by David Popenoe, *see* McQuigg at 40, as authoritative in spite of the fact that his work does not analyze families with same-sex parents.

---

735 (2012). The ASA's review of the studies confirms that they are methodologically sound and conform to the highest standards of sociological research.

Moreover, opponents of same-sex marriage often rely on two papers by Mark Regnerus for the proposition that children fare better with different-sex parents. But for the reasons articulated below, and as Regnerus himself acknowledges, these papers do not examine, and provide no conclusions regarding, the wellbeing of children who lived with and were raised by same-sex parents.

As described below, the reports put forth by Appellants and opponents of same-sex marriage have no bearing on the issue of same-sex parents because they draw inappropriate apples-to-oranges comparisons and often do not address same-sex parents at all.  Moreover, some of the findings in the studies are mischaracterized by Appellants and actually affirm that family stability and greater parental socioeconomic resources are the principal factors affecting child wellbeing.

**A.    STUDIES CITED BY OPPONENTS OF SAME-SEX MARRIAGE DO NOT ADDRESS SAME-SEX PARENTS AND DO NOT UNDERMINE THE CONSENSUS**

Opponents of same-sex marriage often rely on studies analyzing stepparents, single parents, and adoptive parents—none of which address same-sex parents or their children—in order to make speculative statements about the wellbeing of children of same-sex parents.  The studies confirm that parental stability and higher parental socioeconomic resources are the key drivers of positive child outcomes.

14

1.    **Studies Regarding the Impact of Biological and Non-Biological Parents**

Opponents of marriage for same-sex couples often cite studies purporting to show that children are best served by biological parents rather than adoptive parents or those conceived by donor sperm. *See* Brief of Appellant McQuigg at 38–39 (citing Institute for American Values (Elizabeth Marquardt, Norval D. Glenn, & Karen Clark), *My Daddy's Name is Donor: A New Study of Young Adults Conceived Through Sperm Donation* (2010)). It is hard to see the relevance of reports about the significance of biological parenting on the issue of marriage rights for same-sex couples given that both adoption and assisted reproduction are widely used by different-sex couples, as reflected in the very sources cited in support of the Virginia Marriage Bans.

But in any case, there is no basis for the assertion that adoption or assisted reproduction leads to negative child outcomes. Studies indicate that children raised in adoptive families since infancy or in families utilizing assisted reproduction techniques fare just as well as other children. *See also* Gartrell & Bos at 33–34 (showing that "adolescents who have been raised since birth in planned lesbian families demonstrate healthy psychological adjustment" and that they "demonstrated higher levels of social, school/academic, and total competence than gender-matched normative samples of American teenagers"); Brent Miller et al., *Comparisons of Adopted and Non-Adopted Adolescents In A Large, Nationally*

15

*Representative Sample*, 71 Child Development 1458 (2000) (finding little difference between adoptees and non-adoptees who live in two-parent families, and finding, to the extent there was any difference, that the difference occurs in children who were adopted later in their childhood).  The recent 2013 study by Goldberg and Smith corroborates this finding.  That study examined 120 families who have adopted children younger than 18 months old.  Utilizing longitudinal data, the study reported that adopted children across families with male same-sex, female same-sex, and different-sex parents fair equally as well in terms of externalizing and internalizing behaviors, which are well established factors for measuring child wellbeing.  *See* Goldberg and Smith.

<b>2.    Studies Regarding the Impact of Stepparents, Divorced<br>Parents, or Single Parents</b>

Opponents of same-sex marriage often rely on studies examining the impact of stepparents, divorced parents, and single parents on child wellbeing outcomes, and use these studies to argue that two biological parents are necessary to positive child outcomes.  Contrary to their assertions, these studies in no way examine same-sex parents or their impact on child wellbeing.  *See, e.g.*, Kristin Anderson Moore et al., *Marriage from a Child's Perspective: How Does Family Structure Affect Children, and What Can We Do About It?*, Child Trends Research Brief 1–2, 6 (June 2002), http://www.childtrends.org/wp-content/uploads/2013/03/MarriageRB602.pdf (comparing the wellbeing of children

16

raised by stepparents and single parents to that of children raised by stable, two parent families); Sara McLanahan & Gary Sandefur, *Growing Up with a Single Parent* 38 (1994) (comparing "disrupted" families with "intact" families, but nowhere discussing same-sex parents); Marilyn Coleman et al., *Reinvestigating Remarriage: Another Decade of Progress*, 62 Journal of Marriage & Family 1288 (2000) (comparing stepparents to non-divorced parents, but not addressing same-sex parents); Mark V. Flinn et al., *Growth and Fluctuating Assymetry of Stepchildren*, 20 Evolutionary Human Behavior 465 (1999) (analyzing the wellbeing of children raised by stepfathers, but not addressing same-sex parents); Nicholas H. Wolfinger, *Understanding the Divorce Cycle: The Children of Divorce in Their Own Marriages* (2005) (analyzing the impact of divorce, but not addressing same-sex parents). Accordingly, they cannot be relied upon as scientific evidence regarding the effects of same-sex parenting.

Aside from not specifically addressing same-sex parents, the studies regarding stepparents and divorce indicate that child outcomes are, on average, not as positive because of the disruption caused by divorce or the introduction of a new parent into the family, but do not indicate that the source of the negative outcomes is related to the fact that the stepparent is not biologically related to the child. *See, e.g.*, Moore et al. at 1 ("Divorce is linked to academic and behavior problems among children, including depression, antisocial behavior, impulsive/hyperactive

17

behavior, and school behavior problems.  Mental health problems linked to marital disruption have also been identified among young adults.").  Therefore, the argument that research regarding stepparents is relevant to same-sex parents because at least one of the same-sex parents is not the biological parent, and is therefore "step," is misplaced.  In a planned, same-sex parent family, both parents have brought the child into the family and raised the child from infancy.  Accordingly, the studies cited by Appellants analyzing the effects of single parents and stepparents are mischaracterized.  The research on children in divorced, single parent, and stepparent families simply says nothing about the wellbeing of children raised by same-sex parents.

Finally, and critically, the authors of one of the principal studies relied on by Appellants—the Child Trends study by Kristin Anderson Moore, et al.—have publicly responded that their study focused on children being raised in families headed by single parents, stepparents, and married, different-sex parents and not same-sex parents.  *See* Kristin Anderson Moore et al.  Moreover, before the Supreme Court considered *Windsor* and *Perry*, the authors of the Child Trends study expressly disclaimed the misuse of their study by the Bipartisan Legal Advisory Group, which defended DOMA, explaining that "no conclusions can be drawn from this research about the wellbeing of children raised by same-sex parents or adoptive parents."  *Id*.  In addition, this study concluded that "when

18

researchers have compared marriage to cohabitation, they have found that marriage is associated with better outcomes for children." *Id.* Extending this logic to the context of same-sex couples and their children, recognition of marriage rights of such couples would improve, not impair, the wellbeing of children being raised by currently unmarried same-sex parents. *See also* Wendy D. Manning & Kathleen A. Lamb, *Adolescent Well-Being in Cohabiting, Married, and Single-Parent Families*, 65 Journal of Marriage & Family 876 (2003) (noting that marriage provides enhanced socioeconomic resources to families, improving child wellbeing outcomes); Pamela J. Smock & Wendy D. Manning, *Living Together Unmarried in the United States: Demographic Perspectives and Implications for Family Policy*, 26 Law & Policy 87, 94 (2004) (discussing the role of marriage in contributing to the stability of a family).

### 3.    Studies Regarding Gender Roles in Families with Different-Sex Parents

Opponents of marriage for same-sex couples also rely on a number of studies that examine the parental roles of mothers and fathers within the context of different-sex parent families and claim that these studies demonstrate that child wellbeing depends on having both a male and female parent. *See, e.g.*, C.A. Nelson & M. Bosquet, *Neurobiology of Fetal and Infant Development: Implications for Infant Mental Health*, in *Handbook of Infant Mental Health* 37–59 (C.H. Zeanah Jr. ed., 2d ed. 2000); Eleanor Maccoby, *The Two Sexes* 266–67

19

(1998); Paul R. Amato & Fernando Rivera, *Paternal Involvement and Children's Behavior Problems*, 61 Journal of Marriage & Family 375 (1999); Shmuel Shulman & Moshe M. Klein, *Distinctive Role of the Father in Adolescent Separation-Individuation*, 62 New Directions for Child & Adolescent Development 41, 53 (1993). But these studies do not support this suggestion, and reliance on them is misplaced for multiple reasons.

First, like the other studies cited by opponents of marriage for same-sex couples, these studies do not examine the parenting and disciplinary dynamics of same-sex parents. Without any social science evidence to support their conclusion, they are asking a court to deduce that a child raised by two married same-sex individuals would not receive the necessary neural development or improvement in emotional and communicative skills. No such conclusion is proper based on any study published to date.

Second, these opponents ignore the fact that the research regarding different parenting roles and styles indicates that those roles are relative, and nothing in the research indicates that same-sex couples are not able to provide such parenting dynamics. *See* David Popenoe, *Life Without Father: Compelling New Evidence that Fatherhood & Marriage Are Indispensable for the Good of Children & Society,* 147 (1996) (noting that among same-sex parents, one partner commonly

fills the "male-instrumental role while the other fills the female-expressive role" in rearing their children).

Third, the research also indicates that there is a range of parenting styles, that no couple parents identically, and that children do not need their parents to adopt particular parenting styles to be well adjusted. *See* Paul R. Amato & Frieda Fowler, *Parenting Practices, Child Adjustment, and Family Diversity*, 64 Journal of Marriage & Family 703, 714 (2002) ("When parents spend time with children, help with homework, talk about problems, provide encouragement, and show affection, children do well."). Fourth, arguments based on rigid gender roles should be rejected as courts and social scientists routinely decline to rely upon "outdated misconceptions" and "loose-fitting characterizations" regarding gender. *See Craig v. Boren*, 429 U.S. 190, 198–99 (1976); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 255-56 (1989) ("[W]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group[.]").

Finally, the studies relied on by the Appellants that examine the role of absentee fathers, *see, e.g.*, Popenoe at 146, do not establish that, within the context of same-sex parents, fathers are necessary to the child's wellbeing. In fact, the research regarding the negative impact of absentee fathers, such as David Popenoe's, has nothing to do with the unique contributions of fathers, but rather

21

with the loss of a parental relationship. *Id*. at 139 ("Much of what fathers contribute to child development, of course, is simply the result of being a second adult in the home.  Other things being equal, two adults are far better than one in raising children. As the distinguished developmental psychologist Urie Bronfenbrenner has noted, the quality of interaction between principal caregiver and child depends heavily on the availability and involvement of another adult, a *third party* who assists, encourages, spells off, gives status to, and expresses admiration and affection for the person caring for and engaging in joint activity with the child." *Id.* (internal quotations omitted)).

In sum, the studies relied upon by Appellants here (as well as opponents of marriage for same-sex couples generally) examine child outcomes within the context of different-sex relationships, and do not address the impact of same-sex parents on child wellbeing.  These studies do not undermine the social science consensus, supported by the most reliable studies available, that children raised by same-sex parents fare just as well as children raised by different-sex parents across a broad spectrum of indicators.

### B. THE REGNERUS PAPERS DO NOT SUPPORT CONCLUSIONS ABOUT CHILDREN RAISED BY SAME-SEX PARENTS

Opponents of same-sex marriage often rely on two papers by Mark Regnerus, referred to herein as "Regnerus 2012a" and "Regnerus 2012b," to

demonstrate that children of same-sex parents do not fare as well as with children of opposite-sex parents. *See* Mark Regnerus, *How Different Are The Adult Children of Parents Who Have Same-Sex Relationships?  Findings from the New Family Structures Study*, 41 Social Science Research 752 (2012) ("Regnerus 2012a"); Mark Regnerus, *Parental Same-Sex Relationships, Family Instability, and Subsequent Life Outcomes for Adult Children: Answering Critics of the New Family Structures Study with Additional Analyses*, 41 Social Science Research 1367 (2012) ("Regnerus 2012b").  Both papers are analyzed in greater detail below, but it is important to note at the outset that Regnerus 2012a did not examine children raised by same-sex parents, and provides no support for the conclusions that same-sex parents are inferior parents or that the children of same-sex parents experience worse outcomes.  This critique of Regnerus 2012a was made in an internal audit in the very journal in which Regnerus's article was published— indeed, this audit went so far as to state that the Regnerus 2012a paper should not have been published.  Darren E. Sherkat, *The Editorial Process and Politicized Scholarship: Monday Morning Editorial Quarterbacking and a Call for Scientific Vigilance*, 41 Social Science Research 1346–1349 (2012).   Nor does the re-stated Regnerus 2012b paper remedy the deficiencies contained in Regnerus 2012a.

23

### 1.    The Regnerus 2012a Paper Offers No Basis for Conclusions About Same-Sex Parents

First, the Regnerus 2012a paper does not specifically examine children born or adopted into same-sex parent families, but instead examines children who, from the time they were born until they were 18 or moved out, had a parent who at some time had "a same-sex romantic relationship." *See* Regnerus 2012a at 752.  As Regnerus noted, the majority of the individuals characterized by him as children of 'lesbian mothers' and 'gay fathers' were the offspring of failed different-sex unions whose parent subsequently had a same-sex relationship.  *Id*.  In other words, Regnerus did not study or analyze the children of two same-sex parents.

Second, when the Regnerus 2012a paper compared the children of parents who at some point had a "same-sex romantic relationship," most of whom had experienced a family dissolution or single motherhood, to children raised by two biological, married different-sex parents, the study stripped away all divorced, single, and stepparent families from the different-sex group, leaving only stable, married, different-sex parent families as the comparison.  *Id.* at 757 (the comparison group consisted of individuals who "[l]ived in intact biological famil[ies] (with mother and father) from 0 to 18, and parents are still married at present").  Thus, it was hardly surprising that this different-sex parent group had better outcomes given that stability, as noted above, is a key predictor of positive child wellbeing.  By removing divorced, single, and step-parent families from the

24

different-sex group, the Regnerus 2012a paper makes inappropriate apples-to-oranges comparisons.

Third, the Regnerus 2012a data analysis failed to consider whether the children lived with, or were raised by, the parent who was, at some point, apparently involved in "a romantic relationship with someone of the same sex" and that same-sex partner. *Id*. at 756. Instead, Regnerus categorized children as raised by a parent in a same-sex relationship regardless of whether they were in fact raised by the parent and the parent's same-sex romantic partner and regardless of the amount of time that they spent under the parent's care. As a result, so long as an adult child believed that he or she had *had* a parent who at some point had a relationship with someone of the same sex, then he or she was counted by Regnerus as having been "raised by" a parent in a same-sex relationship.

Fourth, in contrast to every other study on same-sex parents, Regnerus 2012a identified parents who had purportedly engaged in a same-sex relationship based solely on the child's own retrospective report of the parent's romantic relationships that were made once the child was an adult. This unusual measurement strategy ignored the fact that the child may have limited and inaccurate recollections of their parents' distant romantic pasts. *Id*.

Finally, Regnerus failed to account for the fact that negative outcomes may have been caused by other childhood events or events later in the individual's adult

25

life, particularly given that the vast majority of the outcomes measured (thirty-seven of forty) were adult and not childhood outcomes. Regnerus himself recognizes that the survey data he relied upon—the New Family Structures Study—"is poised to address [questions] about the lives of young adults between the ages of 18 and 39, but not about children or adolescents." Regnerus 2012a at 755. Factors other than having same-sex parents are likely to explain these outcomes in the Regnerus 2012a study. Regnerus himself concludes that "I am thus not suggesting that growing up with a lesbian mother or gay father causes suboptimal outcomes *because of* the sexual orientation or sexual behavior of the parent." *Id.* at 766 (emphasis in original).

In sum, by conflating children raised by same-sex parents with individuals who reportedly had a parent who had "a romantic relationship with someone of the same sex" at some point, and referring to such individuals as children of "lesbian mothers" or "gay fathers," the Regnerus 2012a paper obscures the fact that it did not specifically examine children raised by two same-sex parents. It cannot speak to the wellbeing of children raised by same-sex parents.

2.    The "Re-Stated" Regnerus 2012b Paper Offers No Basis for Conclusions About Same-Sex Parents

A group of over one hundred social scientists signed an article faulting the Regnerus 2012a paper for failing to take account of family structure and family instability. *See* Gary J. Gates et al., *Letter to the Editor and Advisory Editors of*

26

*Social Science Research*, 41 Social Science Research 1350 (2012).  The article

specifically criticized Regnerus 2012a's failure to "distinguish between the impact

of having a parent who has a continuous same-sex relationship from the impact of

having same-sex parents who broke-up from the impact of living in a same sex

stepfamily from the impact of living with a single parent who may have dated a

same-sex partner." *Id.*  Regnerus acknowledged the merit of these scholarly

critiques regarding the underlying aspects of his research and subsequently

published a second analysis of the data, which is referred to as Regnerus 2012b.

Through Regnerus 2012b, Regnerus attempted to remedy the fact that Regnerus

2012a did not analyze whether the children had actually lived with the parent who,

according to the adult child, had at some point, been "romantically involved" with

someone of the same sex.

Nevertheless, the Regnerus 2012b analysis does *not* resolve the problems

inherent in the initial analysis and contains many of the same shortcomings.  First,

a recently published review of Regnerus 2012a elaborated on these shortcomings.

*See* Andrew J. Perrin, *Are Children of Parents Who Had Same-Sex Relationships*

*Disadvantaged?  A Scientific Evaluation of the No-Differences Hypothesis*, 17

Journal of Gay & Lesbian Mental Health 327 (2013).[9]  Second, Regnerus 2012b

---

[9]  The U.S. District Court for the Eastern District of Michigan recently evaluated Regnerus's study, finding that it was "flawed on its face." *See DeBoer v. Snyder*, No. 12-CV-10285, 2014 U.S. Dist. LEXIS 37274, at *23 (E.D. Mich. Mar. 21, 2014).

maintained the same flawed and extremely broad definition of what constitutes "lesbian mothers" and "gay fathers" for the purposes of the study—that is, a mother or father who ever had a romantic relationship with someone of the same-sex during the period from the birth of the child until the child turned eighteen (or left home to be on their own). Regnerus 2012b at 1368. Accordingly, Regnerus 2012b continues to ignore stability as the primary factor in child outcomes. Third, Regnerus 2012b still fails to account for the duration of time spent with a mother who was "romantically involved" with a same-sex partner and that partner. *See id.* at 1372. Only *two* of the eighty-five children who at some point lived with a mother who was "romantically involved" with another woman reported that they did so for the entire duration of their childhood. Finally, the Regnerus 2012b paper is still not informative of same-sex parents because Regnerus did not determine whether the recorded childhood experiences occurred while the mother lived with a same-sex partner *or* during another family living arrangement.

If any conclusion can be reached from Regnerus 2012a and 2012b, it is that family stability is predictive of child wellbeing. As Regnerus himself notes, family structure (for instance whether the family has a single parent or two parents) matters significantly to child outcomes. *See* Regnerus 2012a at 761. As the social science consensus described above demonstrates, the evidence regarding children raised by same-sex parents overwhelmingly indicates that they fare just as well as

28

children raised by different-sex parents, and that children raised by same-sex parents are likely to benefit from the enhanced stability the institution of marriage provides to their families.  All told, the Regnerus studies, even as revised, simply do not undermine the consensus that children raised by same-sex parents fare just as well as those raised by different-sex parents.

## CONCLUSION

The social science consensus is both conclusive and clear: children fare just as well when they are raised by same-sex parents as when they are raised by different-sex parents.  This consensus holds true across a wide range of child outcome indicators and is supported by numerous reliable studies, including those using nationally representative data.  Accordingly, assuming that any of the Virginia Marriage Bans has any effect on whether children are raised by different-sex or same-sex parents, there is no basis to prefer different-sex parents over same-sex parents.  The research supports the conclusion that extension of marriage rights to same-sex couples has the potential to improve child wellbeing insofar as the institution of marriage may provide social and legal support to families and enhances family stability, which are key drivers of positive child outcomes.  The Regnerus papers and other sources relied on by opponents of marriage for same-sex couples provide no basis for their arguments because they do not examine the wellbeing of children raised by same-sex parents.  These studies therefore do not

29

undermine the consensus from the social science research and do not establish a

legitimate basis for the Virginia Marriage Bans.

Dated: April 16, 2014

Respectfully submitted,

    s/ Carmine D. Boccuzzi, Jr.    
Carmine D. Boccuzzi, Jr.
    *Counsel of Record for Amicus Curiae*
Mark A. Lightner
Andra Troy
Andrew P. Meiser
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000
cboccuzzi@cgsh.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,880 words, excluding the parts of the brief  exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-piont Times New Roman font.


Dated:  April 16, 2014

                                  s/ Carmine D. Boccuzzi, Jr.
                                  Carmine D. Boccuzzi, Jr.
                                  Attorney for American Sociological Association
                                  as Amicus Curiae
                                  One Liberty Plaza
                                  New York, New York 10006
                                  cboccuzzi@cgsh.com
                                  212-225-2000

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2014, I electronically filed the Amicus Curiae Brief of the American Sociological Association in Support of Plaintiffs-Appellees and Plaintiffs-Appellees/Cross-Appellants using the Court's CM/ECF system.

I certify that the foregoing document was served on all parties of their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record as follows:

Dated: April 16, 2014

s/ Carmine D. Boccuzzi, Jr.
Carmine D. Boccuzzi, Jr.
Attorney for American Sociological Association
as Amicus Curiae
One Liberty Plaza
New York, New York 10006
cboccuzzi@cgsh.com
(212) 225-2000